FAXED

ORIGINAL

Herbert P. Kunowski, Esq. (SBN 150141)
WILSON, ELSER, MOSKOWITZ,
EDELMAN & DICKER LLP
555 S. Flower Street, Suite 2900
Los Angeles, California 90071
Telephone: (213) 443-5100
Facsimile: (213) 443-5101
Attorneys for Movant,
CANOPIUS US INSURANCE, INC.

Case # : 15-42341-RLEST
Debtor.: EMPYREAN TOWERS, LLC
Judge..: ROGER EFREMSKY
Chapter: ST

Filed : December 21, 2015 14:41:43
Deputy : CP
Receipt: 40096463
Amount : $176.00

RELIEF ORDERED
Clerk, U.S. Bankruptcy Court
Northern District Of California

**UNITED STATES BANKRUPTCY COURT**

**NORTHERN DISTRICT OF CALIFORNIA – OAKLAND DIVISION**

| | |
|---|---|
| In re: | **Case No. 15-42341 RLE** |
| | **Chapter 11** |
| EMPYREAN TOWERS, LLC, | **CANOPIUS US INSURANCE, INC.'S NOTICE OF MOTION AND MOTION FOR RELIEF FROM AUTOMATIC STAY; MEMORANDUM OF POINTS AND AUTHORITIES AND DECLARATIONS OF KELLY PERKINS AND KEVIN PARK IN SUPPORT THEREOF** |
| | **DATE: January 13, 2016**<br>**TIME: 2:00 p.m.**<br>**CTRM: 201** |
| Debtor. | **Hon. Roger L. Efremsky** |
| | **1300 Clay Street**<br>**Oakland, California 94612** |

TO THE DEBTOR HEREIN, THE CHAPTER 11 AND U.S. TRUSTEES, AND ALL OTHER INTERESTED PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on January 13, 2016, at 2:00 p.m., or as soon thereafter as this matter may be heard, in Courtroom 201 of the above-entitled Court, located at 1300 Clay Street in Oakland, California 94612, Movant, Canopius US Insurance, Inc. ("Canopius"), will move the Court to grant it relief from the automatic stay, to the extent applicable, to allow Canopius to cancel its Commercial General Liability Insurance Policy No. OUS009082614

issued to the Debtor, Empyrean Towers, LLC (the "Debtor"), with the cancellation effective upon service of notice of entry of this Court's order granting Canopius' motion herein at least 30 days after service of the instant motion upon the Debtor. In that regard, Canopius respectfully requests the Court to waive the 14-day stay provided by FRBP 4001(a)(3).

This motion is and will be based upon this notice, the attached motion, the attached memorandum of points and authorities, the attached declarations of Kelly Perkins and Kevin Park, the attached exhibits, and upon such further evidence and written and oral argument that may be submitted to this Court.

PLEASE TAKE FURTHER NOTICE that Respondents must appear personally or by counsel at the above-captioned hearing and may file responsive pleadings, points and authorities and declarations. Should Respondents fail to appear, default may be entered in favor of Canopius.

Respectfully submitted,

Dated: December 21, 2015

WILSON, ELSER, MOSKOWITZ,
EDELMAN & DICKER LLP

By: [signature]
Herbert P. Kunowski, Esq.
Attorneys for Movant,
CANOPIUS US INSURANCE, INC.

## MOTION FOR RELIEF FROM AUTOMATIC STAY

Canopius US Insurance, Inc. ("Canopius") respectfully requests this Court to grant it relief from the automatic stay, to the extent applicable, to allow it to cancel its Commercial General Liability Insurance Policy No. OUS009082614 ("Canopius Policy"), which was issued post-petition to the Debtor, Empyrean Towers, LLC (the "Debtor"), on October 13, 2015. Good cause exists for the relief requested herein, as the Canopius Policy was not property of the estate at the time of the commencement of the Debtor's case, and as a post-petition liability insurance policy, the Debtor has no equity in the Canopius Policy and it is not necessary to any effective reorganization. Case law is clear that while a liability policy may be considered property of the estate, the automatic stay under 11 U.S.C. Section 362 is inapplicable to a post-petition contract, as here, and the filing of bankruptcy does not modify the rights of the parties under their contract, which in this case provides for either party to cancel the Canopius Policy without cause for any reason. Furthermore, even if a specific reason was required for cancellation, which is not the case here, the Debtor made a material misrepresentation to Canopius upon which it reasonably relied in issuing the Canopius Policy, which fully justifies cancelling it.

Accordingly, to the extent applicable, Canopius respectfully requests this Court to grant it relief from the automatic stay to allow it to cancel the Canopius Policy, with the cancellation effective upon service of notice of entry of this Court's order granting Canopius' motion herein at least 30 days after service of the instant motion upon the Debtor. In that regard, Canopius respectfully requests the Court to waive the 14-day stay provided by FRBP 4001(a)(3).

Respectfully submitted,

Dated: December 21, 2015

WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER LLP

By: [signature]
Herbert P. Kunowski, Esq.
Attorneys for Movant,
CANOPIUS US INSURANCE, INC.

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. SUMMARY OF FACTS AND RELIEF SOUGHT

### A. The Debtor's Chapter 11 Case

On July 30, 2015, the Debtor, Empyrean Towers, LLC (the "Debtor"), filed its voluntary petition for relief under Chapter 11 of the U.S. Bankruptcy Code. Movant, Canopius US Insurance, Inc. ("Canopius"), understands that the Debtor continues to operate its business as a debtor-in-possession pursuant to the Bankruptcy Code.

### B. The Canopius Policy

Canopius issued its Commercial General Liability Insurance Policy No. OUS009082614 ("Canopius Policy," attached hereto as Exhibit A), to the Debtor effective October 13, 2015 to October 13, 2016. (Exhibit A, p.13, Declaration Page). Pursuant to its terms, the Debtor may cancel the Canopius Policy by mailing or delivering to Canopius advance written notice of cancellation. (Exhibit A, p.24, Common Policy Conditions, Clause A.1.). Also pursuant to its terms, Canopius may cancel the Canopius Policy by mailing or delivering to the Debtor written notice of cancellation at least ten days before the cancellation date (if for nonpayment of premium), or at least 30 days before the effective date if cancelled "for any other reason." (Exhibit A, p.24, Common Policy Conditions, Clause A.2.).

### C. Relief Sought

Canopius respectfully requests this Court to grant it relief from the automatic stay, to the extent applicable, to allow it to cancel the Canopius Policy, with the cancellation effective upon service of notice of entry of this Court's order granting Canopious' motion herein at least 30 days after service of the instant motion upon the Debtor.

## II. THE STAY DOES NOT APPLY TO PREVENT CANOPIUS FROM CANCELLING THE CANOPIUS POLICY, AND SHOULD OTHERWISE BE LIFTED TO PERMIT CANOPIUS TO CANCEL IT

Good cause exists for the relief requested herein, as the Canopius Policy was not property of the estate at the time of the commencement of the Debtor's case, and as a post-petition liability insurance policy, the Debtor has no equity in the Canopius Policy and it is not necessary to any effective reorganization. Case law is clear that while a liability policy may be

considered property of the estate, the automatic stay under 11 U.S.C. Section 362 is inapplicable to a post-petition contract, as here, and the filing of bankruptcy does not modify the rights of the parties under their contract, which in this case allows for either party to cancel the Canopius Policy without cause for any reason. Furthermore, even if a specific reason was required for cancellation, which is not the case here, the Debtor made a material misrepresentation to Canopius upon which it reasonably relied in issuing the Canopius Policy, which fully justifies cancelling it.

Notably, "[t]he automatic stay applies only to property owned as of the commencement of the case." *In re Kile,* 345 Bankr. 182, 193 (D. Ariz. 2004), *citing,* 11 U.S.C. § 362(a). As such, although post-petition insurance policies may be considered property of the estate, they "are not subject to 11 U.S.C. § 362 because a post-petition contract (in these cases, an insurance policy) is not property of the estate at the time of the commencement of the case." *In re Plexus Enterprise, Inc.,* 289 Bankr. 778, 779 (M.D. Fla. 2002). *See, also, In re Bolin Oil Co.,* 51 Bankr. 936, 939 (N.D. Ohio 1985) (the underlying policy for the protection of debtors under Section 362, *et seq.,* does not apply to post-petition contracts); *In re New England Marine Services, Inc.,* 174 Bankr. 391, 396 (E.D.N.Y. 1994) (stay not effective to prevent cancellation of post-petition insurance contract).

Furthermore, "however expansive the bankruptcy court's powers may be to protect the property interests of debtors-in-possession, it does not extend to enlarging the rights of a debtor under a contract or rewriting its terms." *In re Capital West Investors,* 186 Bankr. 497, 500 (N.D. Cal. 1995), *quoting, In re Bolin Oil Co., supra,* 51 Bankr. at 938. Indeed, "[i]t is well settled that 'the Bankruptcy Code neither enlarges the rights of a debtor under a contract, nor prevents the termination of a contract by its own terms.'" *In re Carroll,* 903 F.2d 1266, 1271 (9th Cir. 1990), *quoting, In re Advent Corp.,* 24 Bankr. 612, 614 (1st Cir. 1982). In that regard, "the court finds nothing in the Bankruptcy Code which enlarges the rights of the DIP under the contract or which prevents the termination of the insurance under the policy's own cancellation provisions." *In re Douglas,* 18 Bankr. 813, 815 (W.D. Tenn. 1982) (noting that cancellation of the policy was equally available to the debtor at any time should it find insurance at a lesser


Case: 15-42341 Doc# 223 Filed: 12/21/15 Entered: 12/23/15 09:33:33 Page 5 of 21

price or for whatever other reason). Of course, to require an insurance carrier to abandon its contractual rights when issuing a post-petition policy "is tantamount to sending notice to all insurance companies that when dealing with a debtor-in-possession, contractual provisions are of no import." *In re Bolin Oil Co., supra,* 51 Bankr. at 939.

Here, just as with the Debtor, the Canopius Policy allows Canopius to cancel it without cause for any reason. (Exhibit A., p.24, Common Policy Conditions, Clause A.2.). However, even if a specific reason was required, which is not the case here, the Debtor made a material misrepresentation to Canopius upon which it reasonably relied in issuing the Canopius Policy. In that regard, the Debtor failed to disclose its $100,000 fire loss in 2014 on its insurance application submitted for issuance of the Canopius Policy. (See Exhibit B, p.2; Declaration of Kevin Park, ¶ 3). On this basis alone, the Canopius Policy would not have been issued. (Declaration of Kelly Perkins, ¶ 5). And here, the Debtor acknowledged in the insurance application its agreement that a misrepresentation of any of the facts set forth therein will constitute reason to void or cancel any policy issued on the basis of the application. (See Exhibit B, p.2). The Debtor's misrepresentation of its $100,000 fire loss in 2014 is one such reason.

## III. CONCLUSION

For the reasons set forth above, Canopius respectfully requests this Court to grant it relief from the automatic stay, to the extent applicable, to allow it to cancel the Canopius Policy, with the cancellation effective upon service of notice of entry of this Court's order granting Canopius' motion at least 30 days after service of the instant motion upon the Debtor. In that regard, Canopius respectfully requests the Court to waive the 14-day stay provided by FRBP 4001(a)(3).

Respectfully submitted,

Dated: December 21, 2015

WILSON, ELSER, MOSKOWITZ,
EDELMAN & DICKER LLP

By: ______________________
Herbert P. Kunowski, Esq.
Attorneys for Movant,
CANOPIUS US INSURANCE, INC.

## DECLARATION OF KELLY PERKINS

I, Kelly Perkins, declare as follows:

1. I am the Managing Director of the California office of Tapco Underwriters, Inc. ("Tapco"), which is the authorized managing general agent for Canopius US Insurance, Inc. ("Canopius"). I have personal knowledge of the matters stated herein, and could and would competently testify to the following under oath.

2. Tapco provides underwriting services to Canopius and has binding authority from Canopius to approve the issuance of insurance policies for Canopius. In my capacity as Tapco's Managing Director, I was personally involved in the issuance of the Canopius Commercial General Liability Insurance Policy No. OUS009082614 to Empyrean Towers, LLC ("Canopius Policy"). Attached hereto as Exhibit A is a true and correct copy of the Canopius Policy.

3. With respect to the issuance of the Canopius Policy, I dealt with Eric Li of Eric Li Insurance, who represented to me that he was the insurance agent for Empyrean Towers, LLC ("Empyrean"). In approving the issuance of the Canopius Policy, I required Mr. Li to provide Tapco with a completed and executed General Liability Application ("Application") from Empyrean, confirming in writing what Mr. Li had previously told me over the phone. Attached hereto as Exhibit B is a true and correct copy of the completed and executed Application that Tapco received from Mr. Li.

4. I subsequently learned from Pacific Inspections, Inc., the company that Tapco retained to perform an investigation and inspection of Empyrean shortly after the Canopius Policy was issued, that Empyrean had a $100,000 fire loss in 2014. As reflected in the attached Exhibit B, in response to the question on page two of the Application for Empyrean to indicate its losses for the past three years, and if none or no prior, indicate below, the Application stated "None." The statement in the Application that Empyrean had no prior losses for the past three years is consistent with what Mr. Li had previously told me over the phone in response to my inquiry before Tapco received the completed and executed Application from him, which has now been shown to be false.

5. Had Empyrean disclosed on the Application that it had a $100,000 fire loss in 2014, Tapco and I would never have been authorized to approve the issuance of the Canopius Policy.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct, and that this declaration is executed this ___ day of December, 2015 at Santa Ana, California.

Kelly Perkins, Declarant

12/18/15

**DECLARATION OF KEVIN PARK**

I, Kevin Park, declare as follows:

1. I am a retired Battalion Chief from the Daly City Fire Department, and in the course of my employment with Daly City, have held the rank of Fire Captain and Safety Inspector. I am presently working as an inspector with Pacific Inspections, Inc. ("PI"), which performs inspections for insurance companies. I have personal knowledge of the matters stated herein, and could and would competently testify to the following under oath.

2. On October 20, 2015, PI received an assignment from Tapco Underwriters, Inc. ("Tapco"), to perform an inspection of Empyrean Towers, LLC ("Empyrean"), in connection with Canopius US Insurance, Inc.'s Policy No. OUS009082614.

3. In the course of performing my inspection of Empyrean, I interviewed the Receiver's agent, Gerard Keena, and learned that Empyrean had a $100,000 fire loss in 2014, which included fire damage to the walls and ceilings on the first and second levels of the Empyrean building located at 1300 Webster Street in Oakland, California. PI then reported this information to Tapco.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my recollection, and that this declaration is executed this 17 day of December, 2015 at Antioch, California.

[signature]
Kevin Park, Declarant



Case: 15-42341 Doc# 223 Filed: 12/21/15 Entered: 12/23/15 09:33:33 Page 9 of 21

# EXHIBIT A

## Policy Number : OUS009082614

10/13/2015

ERIC LI INSURANCE
1499 BAYSHORE HWY
STE 234
BURLINGAME, CA 94010

**Due to USPS regulations on automated flat mail, YOU may receive the AGENT COPY and the INSURED COPY of the policy in separate envelopes.**

**Agency Information:**

Agency Code: 513242
ERIC LI INSURANCE
1499 BAYSHORE HWY
STE 234
BURLINGAME, CA 94010
Phone Number: (650) 552-9010

## INSURED'S COPY

Exhibit A

10

NOTICE:

1. THE INSURANCE POLICY THAT YOU HAVE PURCHASED IS BEING ISSUED BY AN INSURER THAT IS NOT LICENSED BY THE STATE OF CALIFORNIA. THESE COMPANIES ARE CALLED "NON-ADMITTED" OR "SURPLUS LINE" INSURERS.

2. THE INSURER IS NOT SUBJECT TO THE FINANCIAL SOLVENCY REGULATION AND ENFORCEMENT THAT APPLY TO CALIFORNIA LICENSED INSURERS.

3. THE INSURER DOES NOT PARTICIPATE IN ANY OF THE INSURANCE GUARANTEE FUNDS CREATED BY CALIFORNIA LAW. THEREFORE, THESE FUNDS WILL NOT PAY YOUR CLAIMS OR PROTECT YOUR ASSETS IF THE INSURER BECOMES INSOLVENT AND IS UNABLE TO MAKE PAYMENTS AS PROMISED.

4. THE INSURER SHOULD BE LICENSED EITHER AS A FOREIGN INSURER IN ANOTHER STATE IN THE UNITED STATES OR AS A NON-UNITED STATES (ALIEN) INSURER. YOU SHOULD ASK QUESTIONS OF YOUR INSURANCE AGENT, BROKER, OR "SURPLUS LINE" BROKER OR CONTACT THE CALIFORNIA DEPARTMENT OF INSURANCE AT THE FOLLOWING TOLL-FREE TELEPHONE NUMBER: 1-800-927-4357. ASK WHETHER OR NOT THE INSURER IS LICENSED AS A FOREIGN OR NON-UNITED STATES (ALIEN) INSURER AND FOR ADDITIONAL INFORMATION ABOUT THE INSURER. YOU MAY ALSO CONTACT THE NAIC'S INTERNET WEB SITE AT WWW.NAIC.ORG.

5. FOREIGN INSURERS SHOULD BE LICENSED BY A STATE IN THE UNITED STATES AND YOU MAY CONTACT THAT STATE'S DEPARTMENT OF INSURANCE TO OBTAIN MORE INFORMATION ABOUT THAT INSURER.

6. FOR NON-UNITED STATES (ALIEN) INSURERS, THE INSURER SHOULD BE LICENSED BY A COUNTRY OUTSIDE OF THE UNITED STATES AND SHOULD BE ON THE NAIC'S INTERNATIONAL INSURERS DEPARTMENT (IID) LISTING OF

APPROVED NONADMITTED NON-UNITED STATES INSURERS. ASK YOUR AGENT, BROKER, OR "SURPLUS LINE" BROKER TO OBTAIN MORE INFORMATION ABOUT THAT INSURER.

7. CALIFORNIA MAINTAINS A LIST OF APPROVED SURPLUS LINE INSURERS. ASK YOUR AGENT OR BROKER IF THE INSURER IS ON THAT LIST, OR VIEW THAT LIST AT THE INTERNET WEB SITE OF THE CALIFORNIA DEPARTMENT OF INSURANCE: WWW.INSURANCE.CA.GOV.

8. IF YOU, AS THE APPLICANT, REQUIRED THAT THE INSURANCE POLICY YOU HAVE PURCHASED BE BOUND IMMEDIATELY, EITHER BECAUSE EXISTING COVERAGE WAS GOING TO LAPSE WITHIN TWO BUSINESS DAYS OR BECAUSE YOU WERE REQUIRED TO HAVE COVERAGE WITHIN TWO BUSINESS DAYS, AND YOU DID NOT RECEIVE THIS DISCLOSURE FORM AND A REQUEST FOR YOUR SIGNATURE UNTIL AFTER COVERAGE BECAME EFFECTIVE, YOU HAVE THE RIGHT TO CANCEL THIS POLICY WITHIN FIVE DAYS OF RECEIVING THIS DISCLOSURE. IF YOU CANCEL COVERAGE, THE PREMIUM WILL BE PRORATED AND ANY BROKER'S FEE CHARGED FOR THIS INSURANCE WILL BE RETURNED TO YOU.

D-2 (Effective July 21, 2011)

PREVIOUS NO. NEW

DATE ISSUED
October 20, 2015

THIS DECLARATION PAGE IS ATTACHED TO AND FORMS PART OF CERTIFICATE/COVER NOTE PROVISIONS

ITEM

CERTIFICATE / POLICY NUMBER : **OUS009082614**

1

**Name of Assured**

EMPYREAN TOWERS, LLC

1300 WEBSTER STREET

OAKLAND, CA 94612

ERIC LI INSURANCE
1499 BAYSHORE HWY
STE 234
BURLINGAME, CA 94010

2 Effective From 12:01am Both Days at Standard Time : October 13, 2015 TO October 13, 2016

3 Acting upon your Instruction, we have effected the Insurance with:

| NAME OF INSURERS | AMOUNT OR PERCENT |
|---|---|
| **CANOPIUS US INSURANCE, INC.** | **100%** |

LGYVB

4

| LIMIT | COVERAGE | RATE | PREMIUM |
|---|---|---|---|
| $1,000,000 | COMMERCIAL GENERAL LIABILITY | SEE CGDS01 | $7,942 |
| | | TOTAL BASE | $7,942 |

5

SPECIAL CONDITIONS

**See OUS500 (10/07) Schedule of Forms and Endorsements**

| | |
|---|---|
| TERRORISM PREMIUM | |
| POLICY FEE | $150.00 |
| INSPECTION | |
| TAX | $242.76 |
| STAMPING FEE | $16.18 |
| TOTAL | $8,350.94 |

6 **Countersigned:** **TAPCO Insurance Services**
**Burlington, NC**

In witness whereof this covernote has been signed at BURLINGTON, NC this 20 day of October , 2015

TAPCO Insurance Services

KSHORE CA

by

INSURED

13

Case: 15-42341 Doc# 223 Filed: 12/21/15 Entered: 12/23/15 09:33:33 Page 14 of 21

# SCHEDULE OF FORMS AND ENDORSEMENTS

| POLICY NUMBER: | NAMED INSURED |
|---|---|
| OUS009082614 | EMPYREAN TOWERS, LLC |

Endorsement No./Edition Date/Form Description

| | |
|---|---|
| OUS100 09-07 | COMMON POLICY DEC |
| OUS500 10-07 | SCHEDULE OF FORMS AND ENDORSEMENTS |
| TAP-CRF 07-15 | CLAIM REPORTING INFORMATION |
| OUS101 10-07 | TOTAL OR CONSTRUCTIVE LOSS CAUSE |
| OUS148 10-07 | MIN EARNED PREM ENDT |
| OUS214 10-07 | TERRORISM COVG NOT PURCHASED |
| OUS255 08-12 | GENERAL CLAUSES ENDT |
| OUS267 10-07 | SEVERAL LIABILITY NOTICE |
| OUS268 10-07 | APPLICABLE LAW (U.S.A.) CLAUSE |
| IL 00 17 11-98 | COMMON POLICY CONDITIONS |
| CGDS01 10-01 | CGL COVG PART SUPPLEMENTAL DECLARATIONS |
| CGDS01-EX 10-01 | CGL EXT COVG PART SUPPLEMENTAL DECLARATIONS |
| OUS317 04-08 | COMBINATION GENERAL LIABILITY ENDT |
| OUS-ERP 11-12 | EXCLUSION - EMPLOYMENT-RELATED PRACTICES |
| CG 00 01 12-04 | CGL COVG FORM |
| CG 00 67 03-05 | VIOLATIONS OF STATUTES EMAILS, FAX PHONE CALLS |
| CG 21 16 07-98 | EXCL DESIGNATED PROFESSIONAL SERVICES |
| CG 21 36 03-05 | EXCL NEW ENTITIES |
| CG 21 39 10-93 | CONTRACTUAL LIABILITY LIMITATION |
| CG 21 49 09-99 | TOTAL POLLUTION EXCL ENDT |
| CG 21 60 09-98 | EXCL YEAR 2000 COMPUTER RELATED PROBLEMS |
| CG 21 67 12-04 | EXCL FUNGI OR BACTERIA EXCL |
| UTS-128g(10-94) | OPTIONAL PROVISIONS ENDT |
| TAP-AB-01 (04-11) | ASSAULT AND/OR BATTERY EXCLUSION |
| IL 00 21 05-04 | NUCLEAR ENERY LIABILITY EXCL BROAD FORM |

## ADDITIONAL FORMS

OUS500 (10-07)

INSURED

# Claim Reporting Information

Our commitment to you is to provide fast, fair claim service. Promptly reporting an event that could lead to a claim, as required by your policy, helps us fulfill this commitment to you. Please refer to your policy for this and all other terms and conditions.

To report a claim, you can contact your agent or notify the TAPCO Claims Department by calling 1-800-334-5579; or emailing claims@gotapco.com; or faxing to 336-538-0094.

How To Report A Claim Directly to TAPCO

**Call 1-800-334-5579; or email claims@gotapco.com; or fax to 336-538-0094.**

In order to expedite this process, please be prepared to furnish as much of the following information as possible:

* Your Policy Number
* Date, time, and location of the loss/accident
* Details of the loss/accident
* Name, address and phone number of any involved parties
* If applicable, name of law enforcement agency or fire department along with the incident number

TAP-CRF 07-15

# OUS101 (10/07) Total or Constructive Loss

*Entry is optional if shown in the Common Policy Declarations. If no entry is shown, the effective date of the endorsement is the same as the effective date of the policy.

| *ATTACHED TO AND FORMING PART OF POLICY NO: | *EFFECTIVE DATE OF ENDORSEMENT: | *ISSUED TO: |
|---|---|---|
| OUS009082614 | October 13, 2015 | EMPYREAN TOWERS, LLC |

It is understood and agreed that in the event of a total loss or constructive total loss under the policy, the entire policy premium shall be earned in full and no return premium shall be due to the Named Insured.

*Nothing herein contained shall be held to vary, alter, waive or extend any of the terms, conditions, provisions, agreements or limitations of the above-mentioned Certificate, other than as above stated*

## Minimum Earned Premium Endorsement

The Minimum Earned Premium for the Policy is 25 % of the premiums shown on the Declaration page.

In respect to the Commercial General Liability coverage part, at expiry of a full annual term the underwriters shall retain not less than the deposit premium shown on the declaration, regardless of the premium actually developed upon audit of the premium base.

*Nothing herein contained shall be held to vary, alter, waive or extend any of the terms, conditions, provisions, agreements or limitations of the above mentioned Certificate, other than as above stated.*

## U.S. Terrorism Risk Insurance Act of 2002 as amended
## Not Purchased Clause

*This Clause is issued in accordance with the terms and conditions of the "U.S. Terrorism Risk Insurance Act of 2002" as amended as summarized in the disclosure notice.*

It is hereb y noted that the Underwriters have made available coverage for "insured losses" directly resulting from an "act of terrorism" as defined in the "U.S. Terrorism Risk Insurance Act of 2002" as amended ("TRIA") and the Insured has declined or not confirmed to purchase this coverage.

This Insurance therefore affords no coverage for losses directly resulting from any "act of terrorism" as defined in TRIA except to the extent, if any, otherwise provided by this policy.

All other terms, conditions, insured cove rage and exclusions of this Insurance including applicable limits and deductibles remain unchanged and apply in full force and effect to the coverage provided by this Insurance.

**OUS214 (10-07)**

# OUS255 (08/12) General Clauses Endorsement

## a) Service of Suit Clause –

This Service of Suit Clause will not be read to conflict with or override the obligations of the parties to arbitrate their disputes as provided for in any Arbitration provision within this Policy. This Clause is intended as an aid to compelling arbitration or enforcing such arbitration or arbitral award, not as an alternative to such Arbitration provision for resolving disputes arising out of this contract of insurance (or reinsurance).

It is agreed that in the event of the failure of the Underwriters hereon to pay any amount claimed to be due hereunder, the Underwriters hereon, at the request of the Insured (or Reinsured), will submit to the jurisdiction of a Court of competent jurisdiction within the United States. Nothing in this Clause constitutes or should be understood to constitute a waiver of Underwriters' rights to commence an action in any Court of competent jurisdiction in the United States, to remove an action to a United States District Court, or to seek a transfer of a case to another Court as permitted by the laws of the United States or of any State in the United States.

It is further agreed that service of process in such suit may be made upon Drinker Biddle & Reath LLP, 1177 Avenue of the Americas, New York, NY 10036 , and that in any suit instituted against any one of them upon this contract, Underwriters will abide by the final decision of such Court or of any Appellate Court in the event of an appeal.

The above-named are authorized and directed to accept service of process on behalf of Underwriters in any such suit and/or upon the request of the Insured (or Reinsured) to give a written undertaking to the Insured (or Reinsured) that they will enter a general appearance upon Underwriters' behalf in the event such a suit shall be instituted.

Further, pursuant to any statute of any state, territory or district of the United States which makes provision therefor, Underwriters hereon hereby designate the Superintendent, Commissioner or Director of Insurance or other officer specified for that purpose in the statute, or his successor or successors in office, as their true and lawful attorney upon whom may be served any lawful process in any action, suit or proceeding instituted by or on behalf of the Insured (or Reinsured) or any beneficiary hereunder arising out of this contract of insurance (or reinsurance), and hereby designate the above-named as the person to whom the said officer is authorized to mail such process or a true copy thereof.

## b) Electronic Data Endorsement B-

1. Electronic Data Exclusion

Notwithstanding any provision to the contrary within the Policy or any endorsement thereto, it is understood and agreed as follows:

(a) This Policy does not insure loss, damage, destruction, distortion, erasure, corruption or alteration of ELECTRONIC DATA from any cause whatsoever (including but not limited to COMPUTER VIRUS) or loss of use, reduction in functionality, cost, expense of whatsoever nature resulting therefrom, regardless of any other cause or event contributing concurrently or in any other sequence to the loss.

ELECTRONIC DATA means facts, concepts and information converted to a form useable for communications, interpretation or processing by electronic and electromechanical data processing or electronically controlled equipment and includes programmes, software and other coded instructions for the processing and manipulation of data or the direction and manipulation of such equipment.

COMPUTER VIRUS means a set of corrupting, harmful or otherwise unauthorised instructions or code including a set of maliciously introduced unauthorised instructions or code, programmatic or otherwise, that propagate themselves through a computer system or network of whatsoever nature.

COMPUTER VIRUS includes but is not limited to 'Trojan Horses', 'worms' and 'time or logic bombs'.

(b) However, in the event that a peril listed below results from any of the matters described in paragraph (a) above, this Policy, subject to all its terms, conditions and exclusions, will cover physical damage occurring during the Policy period to property insured by this Policy directly caused by such listed peril.

Listed Perils:
Fire
Explosion

2. Electronic Data Processing Media Valuation

Notwithstanding any provision to the contrary within the Policy or any endorsement thereto, it is understood and agreed as follows:

Should electronic data processing media insured by this Policy suffer physical loss or damage insured by this Policy, then the basis of valuation shall be the cost of the blank media plus the costs of copying the ELECTRONIC DATA from back-up or from originals of a previous generation. These costs will not include research and engineering nor any costs of recreating, gathering or assembling such ELECTRONIC DATA. If the media is not repaired, replaced or restored the basis of valuation shall be the cost

of the blank media. However this Policy does not insure any amount pertaining to the value of such ELECTRONIC DATA to the Assured or any other party, even if such ELECTRONIC DATA cannot be recreated, gathered or assembled.

## c) Terrorism Exclusion Endorsement

Notwithstanding any provision to the contrary within this insurance or any endorsement thereto it is agreed that this insurance excludes loss, damage, cost or expense of whatsoever nature directly or indirectly caused by, resulting from or in connection with any act of terrorism regardless of any other cause or event contributing concurrently or in any other sequence to the loss.

For the purpose of this endorsement an act of terrorism means an act, including but not limited to the use of force or violence and/or the threat thereof, of any person or group(s) of persons, whether acting alone or on behalf of or in connection with any organisation(s) or government(s), committed for political, religious, ideological or similar purposes including the intention to influence any government and/or to put the public, or any section of the public, in fear.

This endorsement also excludes loss, damage, cost or expense of whatsoever nature directly or indirectly caused by, resulting from or in connection with any action taken in controlling, preventing, suppressing or in any way relating to any act of terrorism.

If the Underwriters allege that by reason of this exclusion, any loss, damage, cost or expense is not covered by this insurance the burden of proving the contrary shall be upon the Assured.
In the event any portion of this endorsement is found to be invalid or unenforceable, the remainder shall remain in full force and effect.

## d) Land, Water and Air Exclusion Clause

### LAND, WATER AND AIR EXCLUSION

Notwithstanding any provision to the contrary within the Policy of which this Endorsement forms part (or within any other Endorsement which forms part of this Policy), this Policy does not insure land (including but not limited to land on which the insured property is located), water or air, howsoever and wherever occurring, or any interest or right therein.

## e) Seepage and Pollution Exclusion Clause

### SEEPAGE AND/OR POLLUTION AND/OR CONTAMINATION EXCLUSION

Notwithstanding any provision to the contrary within the Policy of which this Endorsement forms part (or within any other Endorsement which forms part of this Policy), this Policy does not insure:

a) any loss, damage, cost or expense, or
b) any increase in insured loss, damage, cost or expense, or
c) any loss, damage, cost, expense, fine or penalty, which is incurred, sustained or imposed by order, direction, instruction or request of, or by any agreement with, any court, government agency or any public, civil or military authority, or threat thereof, (and whether or not as a result of public or private litigation),

which arises from any kind of seepage or any kind of pollution and/or contamination, or threat thereof, whether or not caused by or resulting from a peril insured, or from steps or measures taken in connection with the avoidance, prevention, abatement, mitigation, remediation, clean-up or removal of such seepage or pollution and/or contamination or threat thereof.

The term 'any kind of seepage or any kind of pollution and/or contamination' as used in this Endorsement includes (but is not limited to):

a) seepage of, or pollution and/or contamination by, anything, including but not limited to, any material designated as a 'hazardous substance' by the United States Environmental Protection Agency or as a 'hazardous material' by the United States Department of Transportation, or defined as a 'toxic substance' by the Canadian Environmental Protection Act for the purposes of Part II of that Act, or any substance designated or defined as toxic, dangerous, hazardous or deleterious to persons or the environment under any other Federal, State, Provincial, Municipal or other law, ordinance or regulation; and
b) the presence, existence, or release of anything which endangers or threatens to endanger the health, safety or welfare of persons or the environment.

## f) Debris Removal Endorsement

### DEBRIS REMOVAL ENDORSEMENT

THIS ENDORSEMENT CONTAINS PROVISIONS WHICH MAY LIMIT OR PREVENT RECOVERY UNDER THIS POLICY FOR LOSS WHERE COSTS OR EXPENSES FOR DEBRIS REMOVAL ARE INCURRED.

Nothing contained in this Endorsement shall override any Seepage and/or Pollution and/or Contamination Exclusion or any Radioactive Contamination Exclusion or any other Exclusion applicable to this Policy.

Any provision within this Policy (or within any other Endorsement which forms part of this Policy) which insures debris removal is cancelled and replaced by the following: