Byron Z. Moldo (SBN 109652)
   bmoldo@ecjlaw.com
**ERVIN COHEN & JESSUP LLP**
9401 Wilshire Boulevard, Ninth Floor
Beverly Hills, California 90212-2974
Telephone (310) 273-6333
Facsimile (310) 859-2325

Attorneys for Mark Adams, State Court Receiver

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| In re | Case No. 15-42341-RLE-11 |
| EMPYREAN TOWERS, LLC, a California limited liability company, | Chapter 11 |
| Debtors. | **RECEIVER'S RESPONSE TO TRUSTEE'S MOTION FOR AUTHORITY TO ENTER PURCHASE OPTION AND PURCHASE AND SALE AGREEMENTS** |
| | Date: March 1, 2016<br>Time: 2:00 p.m.<br>Crtrm.: Courtroom 201<br>1300 Clay Street<br>Oakland, CA 94612 |

RECEIVER'S RESPONSE TO TRUSTEE'S SALE MOTION

Mark S. Adams, State Court Receiver in the matter of *People v. Empyrean Towers, LLC et al.*, Alameda County Superior Court Case No. RG 15765195, hereby submits this response to the Trustee's Motion for Order Authorizing Trustee to Enter Purchase Option and Purchase and Sale Agreements (the "Motion").

I.  **INTRODUCTION AND SUMMARY**

By way of this Response, the Receiver wholeheartedly supports a sale of the property to a nonprofit housing provider such as the reputable Resources for Community Development ("RCD"). RCD's track record shows that it is capable of handling the sometimes conflicting goals of being a market rate purchaser on the one hand, while on the other hand maintaining affordable housing in such a manner as to prevent the dangerous health and safety conditions which prompted the receivership in the first place. Unfortunately, as presented in the motion for authority to enter into an option agreement with RCD (the "Motion"), Chapter 11 Trustee, Randy Sugarman (the "Trustee"), provides no information as to how he proposes to resolve the various issues confronting the bankruptcy estate, not least of which include the tenant habitability concerns and the creditors' claims.

In fact, the Trustee's motion simply ignores these fundamental concerns. There is no proposal in the Motion as to the means by which the Trustee will continue operating the building during the option period. Meanwhile, the Trustee acknowledges that the elevator in the seven story building is still not operable, its electrical capacity is still inadequate, and the bathroom facilities are still in a state of disrepair. How will the Trustee do his job at the building when a potential buyer only posts $50,000 during the next two months? Second, entering into such a long term option agreement without addressing the various claims against the state is simply incomplete. At the very least, one would expect the Trustee to explain whether or not the proposed transaction will satisfy the claims of the secured creditors and administrative claims. The Receiver believes it would be appropriate for these issues to be addressed before the Court approves this transaction, particularly in light of the Trustee's latest acknowledgement that he is still reviewing competing offers.

RECEIVER'S RESPONSE TO TRUSTEE'S SALE MOTION

## II. THE MOTION FAILS TO EXPLAIN HOW IT IS A VIABLE OPTION FOR THE BANKRUPTCY ESTATE, ITS CREDITORS, OR THE TENANTS

On February 9, 2016, the Trustee filed the Motion, seeking authority to enter into an option agreement for the sale of the Empyrean Towers with RCD at a price of $4,500,000. The Motion also provides a vague description of the various hurdles RCD faces in order to obtain the funding necessary to exercise its exclusive option by either March 1, 2017 or June 29, 2017. In the interim, RCD will be required to make a $50,000 payment that is refundable until May 31, 2016, at which point it becomes non-refundable. On June 1, 2016, RCD will be required to make a second payment in the amount of $150,000 which becomes non-refundable four months later on September 30, 2016.

RCD's application for some of the $10 million it needs to carry out its plan will be submitted to the Affordable Housing and Sustainable Communities Program (the "AHSC") of the California Department of Housing and Community Development in May once RCD has "site control." The Motion does not specify how much of the estimated $10 million needed by RCD will be obtained through this channel, nor does it describe the criteria the State uses to evaluate such projects, the competitiveness of such State financing, or the likelihood of obtaining it. RCD explains that the State will make its decision on whether to award funding "in or around September 2016." In other words, RCD will know whether it has a State funded and approved project prior to the September 30, 2016 date when the $150,000 payment becomes non-refundable.

RCD expects to obtain the remainder of the $10 million it needs to complete its project through (a) Low Income Housing Tax Credits "that can be allocated to the project and then sold to private investors to invest in the development"; and (b) through unspecified "tax exempt bond financing." These sources of financing for the project are expected to take an additional "four to five months to put in place." Again, the Motion provides no information how much of the $10 million is expected to be raised through this channel. Dan Sawislak, the executive director of RCD, acknowledges that the timetable for this proposal is aggressive in the context of permanent affordable housing projects. Further, RCD's next payment in the amount of $150,000 would not be due until RCD knows whether or not it can secure these additional funding sources.

In support of the Motion, the Trustee provides a declaration stating, "I have devoted significant time investigating options for the estate's real property. I have met and spoken with potential purchasers other than RCD, including several non-profit organizations which focus on affordable housing, the Collier brokers who had been marketing the property under an agreement with the Debtor, and the many constituents in this bankruptcy case. Based on this investigation, I support the price, the timing and the other terms of the Option." Nothing in the Motion or the Trustee's declaration explains the amounts of other offers, what those other buyers may or may not have proposed in terms of affordable housing or other community benefits, or the Trustee's reasoning for deciding to propose RCD as the buyer.

In contrast to the Trustee's declaration, Innovistech has provided the declaration of Ryan Rodriguez, who is presumably one of the "Collier brokers" referred to obliquely in the Trustee's declaration. Mr. Rodriguez states in his declaration that the Trustee did not respond to an **all-cash** offer of **$5.5 million**, and attaches the various emails to which the Trustee allegedly did not respond. These claims appear credible, as they would be easily refuted if they were not true. Nonetheless, Innovistech failed to provide a declaration by its proposed buyer and relies only on Mr. Rodriguez's sworn statement that Daniel Haber is ready and willing to buy the Property. Meanwhile, there appear to also be efforts on behalf of other non-profit affordable housing developers to purchase the Property on terms more favorable than those currently proposed, but insufficient information was also provided as to such efforts.

More striking, however, is that the Motion and the Trustee's declaration completely fail to address how the proposed transaction will fund the bankruptcy estate, allow for continued maintenance of the property in safe conditions, or aid in addressing creditors' claims.

On February 29, 2016, the Trustee filed a reply that acknowledged that he was still considering the other offers on the table, but which still failed to discuss how the Property will be funded and operated during any option period or the extent of creditor claims and how they will be resolved. The Trustee stated in that reply that he has not completed his review of the competing offers.

## III. THE TRUSTEE MUST PROVIDE FURTHER INFORMATION

"The court's obligation in § 363(b) sales is to assure that optimal value is realized by the estate under the circumstances." *Simantob v. Claims Prosecutor, LLC* (In re Lahijani), 325 B.R. 282, 288-89 (B.A.P. 9th Cir. 2005).

RCD apparently has a track record for completing affordable housing projects in conjunction with municipal governments, and the Receiver is cognizant that RCD's proposal for permanent affordable housing is both a noble goal and a difficult one to finance. But this case was initiated entirely as a result of the deplorable living conditions at the Empyrean Towers that apparently still exist. The Trustee's motion, which contemplates at least a year of further operation by the Trustee gives no explanation of how he will fund those operations, particularly where it will be difficult to collect rent or rent out the unoccupied space at the Property. RCD proposes to completely renovate the Empyrean Towers, so it would seem that there would be an incentive for the Trustee to do as little as possible beyond maintenance – which, in any case, is an expensive and ongoing task. Given the Trustee's admission that he has done nothing to address the elevator or the electricity, it is not clear that maintaining the status quo is sufficient to provide the current residents with a habitable environment. In other words, the Trustee appears to be proposing further postpetition super-priority financing without stating as much and without any plan to rehabilitate the Property in the interim.

The Trustee has not explained how this result is in the best interests of the estate or its creditors or how it assures that optimal value is realized by the estate. The Trustee has failed to give any basis for why he is walking away from $1 million of extra value offered by other buyers. Instead, he proposes a course of action that will require the estate to take on added debt to operate the Empyrean Towers for the next 12 to 16 months while a buyer with no obligation to consummate the proposed transaction attempts to navigate the obscure processes of a State agency.

Ultimately, the Motion does not provide sufficient information for a determination of whether optimal value will be attained by the Trustee's approach. In fact, the Trustee has failed to even delineate his approach to operating the Property during the proposed option period. He

RECEIVER'S RESPONSE TO TRUSTEE'S SALE MOTION

should be required to provide further information, particularly with respect to (a) why he passed up an apparently better offer and (b) how he intends to fund the operations of the property during the 12-16 month timeline of the RCD proposal. In light of the Trustee's statement in his reply filed in support of the Motion that he has not completed his review of the competing offers, perhaps the best course of action is a short continuance to allow him to complete that analysis while providing the further information needed to evaluate whether the Trustee has proposed a course of action that is in the best interests of the bankruptcy estate.

DATED: February 29, 2016  ERVIN COHEN & JESSUP LLP
Byron Z. Moldo

By: /s/ Byron Z. Moldo
Byron Z. Moldo
Attorneys for Mark Adams, State Court Receiver

RECEIVER'S RESPONSE TO TRUSTEE'S SALE MOTION

# CERTIFICATE OF SERVICE

STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

At the time of service, I was over 18 years of age and **not a party to this action**. I am employed in the County of Los Angeles, State of California. My business address is 9401 Wilshire Boulevard, Ninth Floor, Beverly Hills, CA 90212-2974.

On February 29, 2016, I served true copies of the following document(s) described as **RECEIVER'S RESPONSE TO TRUSTEE'S MOTION FOR AUTHORITY TO ENTER PURCHASE OPTION AND PURCHASE AND SALE AGREEMENTS** on the interested parties in this action as follows:

X    **BY CM/ECF NOTICE OF ELECTRONIC FILING:** I electronically filed the document(s) with the Clerk of the Court by using the CM/ECF system. Participants in the case who are registered CM/ECF users will be served by the CM/ECF system.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

Executed on February 29, 2016, at Beverly Hills, California.

_____
Lore Pekrul